**Fill in this information to identify the case:**

Debtor 1  Robert Johnson
Debtor 2
(Spouse, if filing)
United States Bankruptcy Court  Northern District of Illinois
Case number: 18-22632

FILED
U.S. Bankruptcy Court
Northern District of Illinois
10/2/2018
Jeffrey P. Allsteadt, Clerk

EXHIBIT A    16

## Official Form 410
## Proof of Claim

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy. make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

**1. Who is the current creditor?**
Lake in the Woods Unit No. 8020 Condominium, Inc.
Name of the current creditor (the person or entity to be paid for this claim)
Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Lake in the Woods Unit No. 8020 Condominium, Inc.
Name
Keay & Costello, P.C.
128 S. County Farm Road
Wheaton, IL 60187

Contact phone  630-690-6446
Contact email  ben@keaycostello.com

Where should payments to the creditor be sent? (if different)
Name
Contact phone
Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known)  Filed on ___ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing?

Official Form 410    Proof of Claim    page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | | |
|---|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ | |
| 7. How much is the claim? | $ 11588.27 | Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Association common expense | |
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☑ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**  Association lien<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**  $ 110000.00<br>**Amount of the claim that is secured:**  $ 11588.27<br>**Amount of the claim that is unsecured:**  $ 0.00  (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**  $ _____<br><br>**Annual Interest Rate** (when case was filed)  _____ %<br>☑ Fixed<br>☐ Variable | |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ | |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ | |

Official Form 410                                    Proof of Claim                                    page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |

* Amounts are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/2/2018
                   MM / DD / YYYY

/s/ Benjamin J. Rooney
Signature

Print the name of the person who is completing and signing this claim:

Name          Benjamin J. Rooney
              First name   Middle name   Last name

Title

Company       Keay & Costello, P.C.
              Identify the corporate servicer as the company if the authorized agent is a servicer

Address       128 S. County Farm Road
              Number   Street
              Wheaton, IL 60187
              City   State   ZIP Code

Contact phone   630-690-6446     Email   ben@keaycostello.com

Official Form 410        Proof of Claim        page 3

## Lake in the Woods Unit No. 8020 Condo
MC Property Management Corp.
14224 McCarthy Road
Lemont, IL 60439

Robert Johnson
8020 Woodglen Lane 110
Downers Grove, IL 60516

Property Address: 8020 Woodglen Lane 110
Account #: 32234

| Code | Date | Amount | Balance | Check# | Memo |
|---|---|---|---|---|---|
| | **Balance Forward:** | 0.00 | | | |
| Assessment | 8/1/2018 | 218.48 | 218.48 | | Assessment |
| Assessment | 8/22/2018 | 8,591.16 | 8,809.64 | | Assmt Bal from Prior Mgmt |
| Late Fee | 8/22/2018 | 420.00 | 9,229.64 | | Late Fee Bal from Prior Mgmt |
| Legal Fee | 8/22/2018 | 2,233.63 | 11,463.27 | | Legal Bal from Prior Mgmt |

| Current | 30 - 59 Days | 60 - 89 Days | >90 Days | Balance: |
|---|---|---|---|---|
| 11,463.27 | 218.48 | 0.00 | 0.00 | |

*+ 10-2-18 BK Legal fee $125.00  11,588.27  Proof of Claim* (handwritten)

MC Property Management Corp. | 14224 McCarthy Road | Lemont, IL 60439 | 630.985.2500
9/4/2018          Make check payable to: Lake in the Woods Unit No. 8020          Page 1 of 1

# Aged Receivables

Saturday, June 30, 2018

| Date | Charge | Charged | Unpaid | Due Date | Days | Not Due | Current | 30 Days | 60 Days | 90 Days |
|---|---|---|---|---|---|---|---|---|---|---|
| **Robert Johnson at Unit 110** | | | | | | | | | | |
| 9/16/2013 | Late Charge Income | $10.00 | $10.00 | 9/16/2013 | 1,748 | | | | | $10.00 |
| 11/16/2013 | Late Charge Income | $10.00 | $10.00 | 11/16/2013 | 1,687 | | | | | $10.00 |
| 3/7/2014 | Legal Fees | $130.00 | $122.53 | 3/7/2014 | 1,576 | | | | | $122.53 |
| 6/1/2014 | Assessment Income Regular | $218.48 | $218.48 | 6/1/2014 | 1,490 | | | | | $218.48 |
| 6/16/2014 | Late Charge Income | $10.00 | $10.00 | 6/16/2014 | 1,475 | | | | | $10.00 |
| 8/1/2014 | Assessment Income Regular | $218.48 | $218.48 | 8/1/2014 | 1,429 | | | | | $218.48 |
| 8/16/2014 | Late Charge Income | $10.00 | $10.00 | 8/16/2014 | 1,414 | | | | | $10.00 |
| 10/1/2014 | Assessment Income Regular | $218.48 | $18.48 | 10/1/2014 | 1,368 | | | | | $18.48 |
| 11/1/2014 | Assessment Income Regular | $218.48 | $218.48 | 11/1/2014 | 1,337 | | | | | $218.48 |
| 11/16/2014 | Late Charge Income | $10.00 | $10.00 | 11/16/2014 | 1,322 | | | | | $10.00 |
| 12/1/2014 | Assessment Income Regular | $218.48 | $218.48 | 12/1/2014 | 1,307 | | | | | $218.48 |
| 12/16/2014 | Late Charge Income | $10.00 | $10.00 | 12/16/2014 | 1,292 | | | | | $10.00 |
| 12/30/2014 | Legal Fees | $50.00 | $50.00 | 12/30/2014 | 1,278 | | | | | $50.00 |
| 1/1/2015 | Assessment Income Regular | $218.48 | $218.48 | 1/1/2015 | 1,276 | | | | | $218.48 |
| 1/16/2015 | Late Charge Income | $10.00 | $10.00 | 1/16/2015 | 1,261 | | | | | $10.00 |
| 2/1/2015 | Assessment Income Regular | $218.48 | $218.48 | 2/1/2015 | 1,245 | | | | | $218.48 |
| 2/16/2015 | Late Charge Income | $10.00 | $10.00 | 2/16/2015 | 1,230 | | | | | $10.00 |
| 3/30/2015 | Legal Fees | $150.00 | $150.00 | 3/30/2015 | 1,188 | | | | | $150.00 |
| 8/1/2015 | Assessment Income Regular | $218.48 | $51.96 | 8/1/2015 | 1,064 | | | | | $51.96 |
| 8/16/2015 | Late Charge Income | $10.00 | $10.00 | 8/16/2015 | 1,049 | | | | | $10.00 |
| 9/1/2015 | Assessment Income Regular | $218.48 | $218.48 | 9/1/2015 | 1,033 | | | | | $218.48 |
| 9/16/2015 | Late Charge Income | $10.00 | $10.00 | 9/16/2015 | 1,018 | | | | | $10.00 |
| 11/1/2015 | Assessment Income Regular | $218.48 | $218.48 | 11/1/2015 | 972 | | | | | $218.48 |
| 11/16/2015 | Late Charge Income | $10.00 | $10.00 | 11/16/2015 | 957 | | | | | $10.00 |
| 12/1/2015 | Assessment Income Regular | $218.48 | $218.48 | 12/1/2015 | 942 | | | | | $218.48 |
| 12/16/2015 | Late Charge Income | $10.00 | $10.00 | 12/16/2015 | 927 | | | | | $10.00 |
| 1/1/2016 | Assessment Income Regular | $218.48 | $218.48 | 1/1/2016 | 911 | | | | | $218.48 |
| 1/16/2016 | Late Charge Income | $10.00 | $10.00 | 1/16/2016 | 896 | | | | | $10.00 |
| 2/1/2016 | Assessment Income Regular | $218.48 | $218.48 | 2/1/2016 | 880 | | | | | $218.48 |
| 2/16/2016 | Late Charge Income | $10.00 | $10.00 | 2/16/2016 | 865 | | | | | $10.00 |
| 3/1/2016 | Assessment Income Regular | $218.48 | $218.48 | 3/1/2016 | 851 | | | | | $218.48 |
| 3/16/2016 | Late Charge Income | $10.00 | $10.00 | 3/16/2016 | 836 | | | | | $10.00 |
| 4/1/2016 | Assessment Income Regular | $218.48 | $218.48 | 4/1/2016 | 820 | | | | | $218.48 |

# Aged Receivables
Saturday, June 30, 2018

| Date | Charge | Charged | Unpaid | Due Date | Days | Not Due | Current | 30 Days | 60 Days | 90 Days |
|---|---|---|---|---|---|---|---|---|---|---|
| **Robert Johnson at Unit 110 (Continued)** | | | | | | | | | | |
| 4/16/2016 | Late Charge Income | $10.00 | $10.00 | 4/16/2016 | 805 | | | | | $10.00 |
| 5/1/2016 | Assessment Income Regular | $218.48 | $218.48 | 5/1/2016 | 790 | | | | | $218.48 |
| 5/16/2016 | Late Charge Income | $10.00 | $10.00 | 5/16/2016 | 775 | | | | | $10.00 |
| 6/1/2016 | Assessment Income Regular | $218.48 | $218.48 | 6/1/2016 | 759 | | | | | $218.48 |
| 6/16/2016 | Late Charge Income | $10.00 | $10.00 | 6/16/2016 | 744 | | | | | $10.00 |
| 7/1/2016 | Assessment Income Regular | $218.48 | $218.48 | 7/1/2016 | 729 | | | | | $218.48 |
| 7/16/2016 | Late Charge Income | $10.00 | $10.00 | 7/16/2016 | 714 | | | | | $10.00 |
| 8/1/2016 | Assessment Income Regular | $218.48 | $218.48 | 8/1/2016 | 698 | | | | | $218.48 |
| 8/16/2016 | Late Charge Income | $10.00 | $10.00 | 8/16/2016 | 683 | | | | | $10.00 |
| 9/1/2016 | Assessment Income Regular | $218.48 | $218.48 | 9/1/2016 | 667 | | | | | $218.48 |
| 9/13/2016 | Legal Fees | $221.68 | $221.68 | 9/13/2016 | 655 | | | | | $221.68 |
| 9/16/2016 | Late Charge Income | $10.00 | $10.00 | 9/16/2016 | 652 | | | | | $10.00 |
| 10/24/2016 | Legal Fees | $235.00 | $235.00 | 10/24/2016 | 614 | | | | | $235.00 |
| 11/1/2016 | Assessment Income Regular | $218.48 | $218.48 | 11/1/2016 | 606 | | | | | $218.48 |
| 11/16/2016 | Late Charge Income | $10.00 | $10.00 | 11/16/2016 | 591 | | | | | $10.00 |
| 12/1/2016 | Assessment Income Regular | $218.48 | $218.48 | 12/1/2016 | 576 | | | | | $218.48 |
| 12/16/2016 | Late Charge Income | $10.00 | $10.00 | 12/16/2016 | 561 | | | | | $10.00 |
| 1/1/2017 | Assessment Income Regular | $218.48 | $218.48 | 1/1/2017 | 545 | | | | | $218.48 |
| 1/16/2017 | Late Charge Income | $10.00 | $10.00 | 1/16/2017 | 530 | | | | | $10.00 |
| 2/1/2017 | Assessment Income Regular | $218.48 | $218.48 | 2/1/2017 | 514 | | | | | $218.48 |
| 2/16/2017 | Late Charge Income | $10.00 | $10.00 | 2/16/2017 | 499 | | | | | $10.00 |
| 3/1/2017 | Assessment Income Regular | $218.48 | $218.48 | 3/1/2017 | 486 | | | | | $218.48 |
| 3/16/2017 | Late Charge Income | $10.00 | $10.00 | 3/16/2017 | 471 | | | | | $10.00 |
| 4/1/2017 | Assessment Income Regular | $218.48 | $218.48 | 4/1/2017 | 455 | | | | | $218.48 |
| 4/16/2017 | Late Charge Income | $10.00 | $10.00 | 4/16/2017 | 440 | | | | | $10.00 |
| 5/1/2017 | Assessment Income Regular | $218.48 | $218.48 | 5/1/2017 | 425 | | | | | $218.48 |
| 5/16/2017 | Late Charge Income | $10.00 | $10.00 | 5/16/2017 | 410 | | | | | $10.00 |
| 6/1/2017 | Assessment Income Regular | $218.48 | $218.48 | 6/1/2017 | 394 | | | | | $218.48 |
| 6/16/2017 | Late Charge Income | $10.00 | $10.00 | 6/16/2017 | 379 | | | | | $10.00 |
| 7/1/2017 | Assessment Income Regular | $218.48 | $218.48 | 7/1/2017 | 364 | | | | | $218.48 |
| 7/16/2017 | Late Charge Income | $10.00 | $10.00 | 7/16/2017 | 349 | | | | | $10.00 |
| 8/1/2017 | Assessment Income Regular | $218.48 | $218.48 | 8/1/2017 | 333 | | | | | $218.48 |
| 8/16/2017 | Late Charge Income | $10.00 | $10.00 | 8/16/2017 | 318 | | | | | $10.00 |

## Aged Receivables
Saturday, June 30, 2018

| Date | Charge | Charged | Unpaid | Due Date | Days | Not Due | Current | 30 Days | 60 Days | 90 Days |
|---|---|---|---|---|---|---|---|---|---|---|
| **Robert Johnson at Unit 110 (Continued)** | | | | | | | | | | |
| 9/1/2017 | Assessment Income Regular | $218.48 | $218.48 | 9/1/2017 | 302 | | | | | $218.48 |
| 9/16/2017 | Late Charge Income | $10.00 | $10.00 | 9/16/2017 | 287 | | | | | $10.00 |
| 10/1/2017 | Assessment Income Regular | $218.48 | $218.48 | 10/1/2017 | 272 | | | | | $218.48 |
| 10/16/2017 | Late Charge Income | $10.00 | $10.00 | 10/16/2017 | 257 | | | | | $10.00 |
| 11/1/2017 | Assessment Income Regular | $218.48 | $218.48 | 11/1/2017 | 241 | | | | | $218.48 |
| 11/16/2017 | Late Charge Income | $10.00 | $10.00 | 11/16/2017 | 226 | | | | | $10.00 |
| 12/1/2017 | Assessment Income Regular | $218.48 | $218.48 | 12/1/2017 | 211 | | | | | $218.48 |
| 12/4/2017 | Legal Fees | $245.65 | $245.65 | 12/4/2017 | 208 | | | | | $245.65 |
| 12/16/2017 | Late Charge Income | $10.00 | $10.00 | 12/16/2017 | 196 | | | | | $10.00 |
| 1/1/2018 | Assessment Income Regular | $218.48 | $218.48 | 1/1/2018 | 180 | | | | | $218.48 |
| 1/16/2018 | Late Charge Income | $10.00 | $10.00 | 1/16/2018 | 165 | | | | | $10.00 |
| 2/1/2018 | Assessment Income Regular | $218.48 | $218.48 | 2/1/2018 | 149 | | | | | $218.48 |
| 2/7/2018 | Legal Fees | $150.00 | $150.00 | 2/7/2018 | 143 | | | | | $150.00 |
| 2/16/2018 | Late Charge Income | $10.00 | $10.00 | 2/16/2018 | 134 | | | | | $10.00 |
| 3/1/2018 | Assessment Income Regular | $218.48 | $218.48 | 3/1/2018 | 121 | | | | | $218.48 |
| 3/16/2018 | Late Charge Income | $10.00 | $10.00 | 3/16/2018 | 106 | | | | | $10.00 |
| 4/1/2018 | Assessment Income Regular | $218.48 | $218.48 | 4/1/2018 | 90 | | | | | $218.48 |
| 4/16/2018 | Late Charge Income | $10.00 | $10.00 | 4/16/2018 | 75 | | | | $10.00 | |
| 5/1/2018 | Assessment Income Regular | $218.48 | $218.48 | 5/1/2018 | 60 | | | | $218.48 | |
| 5/16/2018 | Late Charge Income | $10.00 | $10.00 | 5/16/2018 | 45 | | | $10.00 | | |
| 6/1/2018 | Assessment Income Regular | $218.48 | $218.48 | 6/1/2018 | 29 | | $218.48 | | | |
| 6/16/2018 | Late Charge Income | $10.00 | $10.00 | 6/16/2018 | 14 | | $10.00 | | | |
| 6/29/2018 | Legal Fees | $201.02 | $201.02 | 6/29/2018 | 1 | | $201.02 | | | |
| | Robert Johnson at Unit 110 Total | $10,532.55 | $10,158.56 | | | | $429.50 | $10.00 | $228.48 | $9,490.58 |

RECORDED
DU PAGE COUNTY

JAN 11   3 00   '71
R71= 1047

A delineation of the property
described in this instrument
appears in
PLAT BOOK NO. *60* PAGE *92*

# LAKE IN THE WOODS

## CONDOMINIUM

No. 8020

Mail:
Harold Louis Miller
33 N. Dearborn St.
Chgo Ill 60682

CHARGE DUPAGE CO. DIVISION

R71- 1047

### ARTICLE IV
### Assessments

**Section 1.** The Board shall cause to be prepared an estimated annual budget for each fiscal year of the Association. Such budget shall take into account the estimated common expenses and cash requirements for the year, including salaries, wages, payroll taxes, supplies, materials, parts, services, maintenance, repairs, replacements, landscaping, insurance, fuel, power and other common expenses (as distinguished from individual mortgage payments, real estate taxes and individual telephone, electricity and other individual utility expenses billed or charged to the separate Unit Owners on an individual or separate basis rather than a common basis). The annual budget shall also take into account the estimated net available cash income for the year from the operation or use of the common parking areas, laundry and other Common Elements. The annual budget shall provide for a reserve for contingencies for the year and a reserve for replacements, in reasonable amounts as determined by the Board. To the extent that the assessments and other cash income collected from the Unit Owners during the preceding year shall be more or less than the expenditures covered for such preceding year, the surplus of deficit, as the case may be, shall also be taken into account. Included in the assessments shall be the assessments levied for the maintenance, improvement, replacement, and repairs to Lots 52 and 53 in Lake In The Woods, a subdivision in N.E. 1/4 of Sec. 32, and N.W. 1/4 of Sec. 33, Town 38 N. range 11, east of the 3rd P.M. in DuPage County, Ill.

**Section 2.** The estimated annual budget for each fiscal year shall be approved by the Board, and copies thereof shall be furnished by the Board to each Unit Owner, not later than 90 days after the beginning of such year. On or before the first day of the first month and of each succeeding month of the year covered by the annual budget, each Unit Owner shall pay, as his respective monthly assessment for the common expenses, one-twelfth (1/12) of his proportionate share of the common expenses for such year as shown by the annual budget. Such proportionate share for each Unit Owner shall be in accordance with his respective ownership interest in the Common Elements as set forth in Exhibit "B" to the Declaration. The Board may cause to be sent to each Unit Owner on or before the first day of each month a statement of the monthly assessment of such Unit Owner for such month, but the failure to send or to receive such monthly statement shall not relieve any Unit Owner of his obligation to pay his monthly assessment on or before the first day of each month. In the event that the Board shall not approve an estimated annual budget or shall fail to determine new monthly assessments for any year, or shall be delayed in doing so, each Unit Owner shall continue to pay each month the amount of his respective monthly assessment as last determined. Each Unit Owner shall pay his monthly assessment on or before the first day of each month to the manager or managing agent or as may be otherwise directed by the Board. No Unit Owner shall be relieved of his obligation to pay his assessments for common expense by abandoning or not using his Unit or the Common Elements.

**Section 3.** For the first fiscal year, the annual budget shall be as approved by the first Board. If such first year, or any succeeding year, shall be less than a full year, then the monthly assessments for each Unit Owner shall be proportionate to the number of months and days in such period covered by such budget. Commencing with the date of occupancy of his Unit by each Unit Owner, he shall pay his assessment for the following month or fraction of a month, which assessment shall be in proportion to his respective ownership interest in the Common Elements and the number of months and days remaining of the period covered by the current annual budget, and which assessment shall be as computed by the Board.

**Section 4.** Within 90 days after the end of each year covered by an annual budget, or as soon thereafter as shall be practicable, the Board shall cause to be furnished to each Unit Owner a statement for such year so ended, showing the receipts and expenditures and such other information as the Board may deem desirable.

**Section 5.** The Board shall cause to be kept a separate account for each Unit Owner showing the respective assessments charged to and paid by such Unit Owner, and the status of his account from time to time. Upon 10 days notice to the Board, and the payment of a reasonable fee, any Unit Owner shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such Unit Owner.

**Section 6.** In the event that during the course of any year, it shall appear to the Board that the monthly assessments, determined in accordance with the estimated annual budget for such year, are insufficient or inadequate to cover the estimated common expenses for the remainder of such year, then the Board shall prepare and approve a supplemental budget covering the estimated deficiency for the remainder of such year, copies of which supplemental budget shall be furnished to each Unit Owner, and thereupon a supplemental assessment shall be made to each Unit Owner for his proportionate share of such supplemental budget.

**Section 7.** The Board shall not approve any capital expenditures in excess of Three Thousand Dollars ($3000.00), nor enter into any contracts for more than two years, without the approval of a majority of the Unit Owners (as such majority is defined in the Declaration).

R71-1047

**Section 8.** It shall be the duty of every Unit Owner to pay his proportionate share of the common expenses, in the same ratio as his percentage of ownership in the Common Elements as set forth in the Declaration, and as assessed in the manner herein provided. If any Unit Owner shall fail or refuse to make any such payment of the common expenses when due, the amount thereof shall constitute a lien on the interest of such Unit Owner in the Property. The Association and the Board shall have the authority to exercise and enforce any and all rights and remedies as provided for in the Condominium Property Act, the Declaration or these By-laws, or otherwise available at law or in equity, for the collection of all unpaid assessments.

**Section 9.** The Board shall cause to be kept detailed and accurate records in chronological order of the receipts and expenditures affecting the Common Elements, specifying and itemizing the common expenses incurred, and such records and the vouchers authorizing the payments of such common expenses shall be available for examination by the Unit Owners at convenient hours of week days. Such payment vouchers may be approved in such manner as the Board may determine.

**Section 10.** The Board of Directors may cause the Association to discharge any mechanic's lien or other encumbrance which in the opinion of the Board may constitute a lien against the Property or Common Elements, rather than against a particular Unit Ownership only. When less than all the Unit Owners are responsible for the existence of any such lien, the Unit Owners responsible shall be jointly and severally liable for the amount necessary to discharge the same and for all costs and expenses (including attorney's fees) incurred by reason of such lien.

### ARTICLE V
### Use and Occupancy Restrictions

**Section 1.** Use and Occupancy Restrictions. No part of the Property shall be used for other than housing and the related common purposes for which the Property was designed. Each Unit or any two or more adjoining Units used together shall be used as a residence for a single family or such other uses permitted by this declaration and for no other purpose. That part of the Common Elements separating any two or more adjoining Units used together as aforesaid may be altered to afford ingress and egress to and from such adjoining Units in such manner and upon such conditions as shall be determined by the Board in writing. The foregoing restrictions as to residence shall not, however, be construed in such manner as to prohibit a Unit Owner from: (a) maintaining his personal professional library therein; (b) keeping his personal business or professional records or accounts therein; or (c) handling his personal business or professional telephone calls or correspondence therefrom. Such uses are expressly declared customarily incident to the principal residential use and not in violation of said restrictions.

**Section 2.** The Common Elements shall be used only for access, ingress and egress to and from the respective Units by the respective families residing therein and their respective guests, household help and other authorized visitors, and for such other purposes which are incidental to the residential use of the respective Units; provided, however, the parking area, laundry room, and other special areas shall be used for the purposes approved by the Board. The use, maintenance and operation of the Common Elements, shall not be obstructed, damaged or unreasonably interfered with by any Unit Owner. The Association and the Board, and their authorized employees and representatives, shall have access to any Unit as may be necessary for the repair, maintenance, replacement, alteration, care or protection of the Common Elements or any portion thereof.

**Section 3.** No animals shall be raised, bred or kept in any Unit, except for dogs, cats or other household pets of a Unit Owner, provided that they are not kept for any commercial purposes, and provided that they shall be kept in strict accordance with the administrative rules and regulations relating to household pets from time to time adopted or approved by the Board, and provided that they shall not in the judgment of the Board constitute a nuisance to others.

**Section 4.** No unlawful, immoral, noxious or offensive activities shall be carried on in any Unit or elsewhere on the Property, nor shall anything be done therein or thereon which shall constitute a nuisance or which shall in the judgment of the Board cause unreasonable noise or disturbance to others.

**Section 5.** Each Unit Owner shall maintain his Unit in good condition and in good order and repair, at his own expense, and shall maintain a minimum temperature in his Unit in the winter as set forth by the Board, and shall not do or allow anything to be done in his Unit which may increase the rate or cause the cancellation of insurance on other Units or on the Common Elements. Each Unit Owner shall not display, hang, store or use any signs, clothing, sheets, blankets, laundry or other articles on his balcony or outside his Unit, or which may be visible through his windows from the outside (other than draperies, curtains or shades of a customary nature and appearance, subject to the rules and regulations of the Board), or paint or decorate or adorn the outside of his Unit, or install outside his Unit any canopy or awning, or outside radio or television antenna, or other equipment,